IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:11-CV-37-D

| | | |
|---|---|---|
| DARRELL R. DOUGLAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

On July 20, 2011, Darrell R. Douglas ("Douglas" or "plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking review of Michael J. Astrue's ("Commissioner" or "defendant") denial of his applications for disability insurance benefits and supplemental security income ("benefits") [D.E. 1]. On January 12, 2012, Douglas filed a motion for judgment on the pleadings [D.E. 14] and a supporting memorandum [D.E. 15]. On April 11, 2012, the Commissioner filed a motion for judgment on the pleadings [D.E. 18] and a supporting memorandum [D.E. 19]. As explained below, the court grants the Commissioner's motion for judgment on the pleadings, denies Douglas's motion for judgment on the pleadings, and affirms the Commissioner's final decision.

I.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); see Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). An ALJ must follow a five-step process to determine whether a claimant is disabled.

An ALJ must consider whether a claimant (1) is engaged in substantial gainful employment, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) possesses the residual functional capacity ("RFC") to return to his past relevant work, and (5) if not, whether he can perform other work in light of his age, education, work experience, and RFC. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See, e.g., Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Pass, 65 F.3d at 1203.

Douglas applied for benefits on July 18, 2008, and on July 24, 2008, alleging that he became disabled on April 1, 2008, due to lower back pain, high blood pressure, and acid reflux. Tr. [D.E. 11] 91–95, 110–20. His applications were denied initially and upon reconsideration, and Douglas timely requested a hearing. Id. 44–60. On November 18, 2010, an Administrative Law Judge ("ALJ") held a hearing on Douglas's applications. Id. 61–74, 450–77. On December 9, 2010, the ALJ issued a decision denying Douglas's applications. Id. 25–35. On December 14, 2010, Douglas timely requested review. Id. 12–13. On May 23, 2011, the Appeals Council denied Douglas's request for review. Id. 4–6.

The ALJ followed the five-step process in Douglas's case. At step one, the ALJ found that Douglas had not engaged in substantial gainful activity since April 1, 2008. Id. 30. At step two, the ALJ found that Douglas suffered from severe medically determinable impairments, including asthma, hypertension, lower back pain, and gastroesophegeal reflux disease. Id. 30. At step three, the ALJ found that Douglas's impairments did not meet or medically equal a listed impairment. Id. 30. The ALJ next determined that Douglas had the RFC to perform light/unskilled work, except that he could not work around fumes, dust, smoke, or extreme temperatures. Id. 31–33. In light of Douglas's RFC, the ALJ found at step four that Douglas could not perform any past relevant work.

2

Id. 33. At step five, the ALJ found that there was a significant number of jobs in the national economy that Douglas could perform, including the jobs of print screen assembler, nut and bolt assembler, and returned good sorter. Id. 34. Accordingly, the ALJ found that Douglas was not disabled during the relevant period and was thus not entitled to benefits. Id. 35.

In a section 405(g) action, the court "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966), abrogated by implication on other grounds by Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003). The court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Craig, 76 F.3d at 589. To determine whether a decision is supported by substantial evidence, the court must determine whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439–40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

In support of his motion for judgment on the pleadings, Douglas first contends that the ALJ failed to sufficiently assess Douglas's asthma. See Pl.'s Mem. Supp. Mot. J. Pleadings [D.E. 15] 3–5. Specifically, Douglas argues that, because the ALJ found at step two that Douglas's asthma was a severe impairment, the ALJ erred by not discussing the severity of Douglas's asthma at subsequent stages. See id. Douglas claims that the ALJ failed to discuss whether Douglas's asthma met a listing and failed to assess his asthma in determining Douglas's RFC. See id. The

3

Commissioner responds that the ALJ did consider Douglas's asthma at steps three, four, and five. See Def.'s Mem. Supp. Mot. J. Pleadings [D.E. 19] 10–11. The Commissioner notes that the ALJ found that Douglas's impairments did not meet or equal a listing, that Douglas does not contend that his asthma was of listing-level severity, that the ALJ did take Douglas's asthma into account by limiting Douglas's RFC to avoid exposure to environmental factors, that the ALJ appropriately included Douglas's asthma in a hypothetical question posed to a vocational expert ("VE") at the hearing, and that the ALJ relied on the VE's testimony to conclude that there were jobs in significant numbers in the national economy that Douglas could perform. See id.

The court agrees with the Commissioner. The ALJ sufficiently considered Douglas's asthma at steps three, four, and five. See Tr. 31–35. At step three, the ALJ found that Douglas did not have an impairment or combination of impairments which met or medically equaled a listing. Tr. 30. Although at step three the ALJ did not specifically discuss Douglas's asthma or listing 3.03, Douglas does not argue and there is little evidence suggesting that Douglas's asthma was sufficiently severe to meet or medically equal listing 3.03. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.03.[1] "The ALJ

---

[1] Listing 3.03 provides:

3.03 Asthma. With:

    A. Chronic asthmatic bronchitis. Evaluate under the criteria for chronic obstructive pulmonary disease in 3.02A;

    Or

    B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. pt. 404, subpt. P, app. 1, § 3.03.

is only required to explicitly identify and discuss the relevant listing of impairments if there is ample evidence in the record to support the determination that the impairment meets or is medically equivalent to one of the listed impairments." Kelly v. Astrue, No. 5:08-CV-289-FL, 2009 WL 1346241, at *14 (E.D.N.C. May 12, 2009) (unpublished) (quotation omitted). Accordingly, the ALJ sufficiently considered Douglas's asthma at step three.

At step four, the ALJ found that Douglas retained the RFC to perform "light/unskilled work, with no work around fumes, dust, smoke, and extreme temperatures." Tr. 31. In so finding, the ALJ summarized Douglas's testimony regarding his asthma as follows:

> In regard to his asthma he stated that the uses an inhaler 3-4 times per day. Wheezing is a problem that comes on 4-5 times a week. He also uses a different inhaler once [every] night and the breathing causes him to have attacks during the night and he loses sleep. This makes him tired the next morning.

Id. Although the ALJ did not specifically note Douglas's asthma in determining Douglas's RFC, the ALJ did discuss Douglas's testimony about his asthma and the record does not suggest that Douglas had any other condition which might have caused the ALJ to impose environmental limitations on Douglas's RFC. Therefore, the ALJ appropriately took Douglas's asthma into account in determining Douglas's RFC. See, e.g., Fox v. Astrue, No. 6:09-cv-06060, 2010 WL 2035602, at *5 (W.D. Ark. May 20, 2010) (unpublished). Thus, the ALJ sufficiently considered Douglas's asthma at step four.

At step five, the ALJ found that Douglas was able to perform jobs that exist in significant numbers in the national economy. Tr. 34. In making this finding, the ALJ relied on the testimony of a VE. Id. To solicit the VE's opinion, the ALJ asked the VE,

> I'd ask you to assume due to asthma, which is documented in the record, that he would be precluded from working in environments with respiratory irritants such as: [d]ust, fumes and smoke at a significant level. And furthermore, that due to asthma,

5

he would not be able to work full time outdoors or in temperature extremes. And, lastly, I'd ask you to assume that he is restricted to unskilled work.

Id. 473. This hypothetical question appropriately took into account Douglas's asthma. Accordingly, the ALJ sufficiently considered Douglas's asthma at step five. In sum, the ALJ appropriately assessed Douglas's asthma at steps three, four, and five. Thus, the court rejects Douglas's first challenge to the Commissioner's final decision.

Next, Douglas contends that the ALJ found an RFC for light work on legally insufficient grounds. See Pl.'s Mem. Supp. Mot. J. Pleadings 5–6. Douglas argues that the ALJ based his RFC assessment solely on reports prepared by two non-examining state agency consultants, neither of which adequately considered Douglas's asthma. See id. Douglas notes that one report omits Douglas's asthma entirely and that the other report includes only a single, brief reference to Douglas's asthma. See id.; see also Tr. 356–63, 413–20. The Commissioner responds that the ALJ did not rely solely on these reports in assessing Douglas's RFC and that the second report sufficiently addresses Douglas's asthma. See Def.'s Mem. Supp. Mot. J. Pleadings 11–13.

The court agrees with the Commissioner. The ALJ sufficiently considered Douglas's asthma in finding that he retained the RFC for light/unskilled work with asthma-related limitations. See Tr. 31–33. In assessing Douglas's RFC, the ALJ considered reports of consultative examinations performed on January 2, 2009, by Dr. Jonas Horwitz and January 5, 2009, by Dr. Juan Alva, respectively, id. 341–46, 349–55, state agency medical consultant reports prepared on February 13, 2009, by Dr. Alan B. Cohen and November 12, 2009, by Dr. Lillian Horne, respectively, id. 356–63, 413–20, and a medical source statement prepared on November 12, 2010, by Douglas's primary care physician, Dr. Raven Deloatch, id. 422–27. See id. 31–33. The ALJ also reviewed the records of several routine examinations that Dr. Deloatch performed. Id. 33. Thus, contrary to Douglas's

argument, the ALJ did not determine Douglas's RFC based solely on two reports. Moreover, substantial evidence supports the ALJ's assessment of Douglas's RFC. For example, the records of Douglas's visits to Dr. Deloatch during 2009 and 2010 note Douglas's asthma (id. 406–11, 428–49), and the ALJ considered these records. Id. 33. Moreover, Douglas cites no other evidence that supports the conclusion that asthma rendered him disabled. As for the evidence that he cites, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Craig, 76 F.3d at 589. Furthermore, although Dr. Cohen's February 13, 2009 report does not mention Douglas's asthma and Dr. Horne's November 12, 2009 report does not discuss Douglas's asthma at length, these facts are not surprising given that Douglas's initial complaints were not related to asthma. Notably, Douglas did not mention asthma in his original applications. Tr. 114. Rather, on April 20, 2009, Douglas supplemented his applications to allege that he had trouble breathing. See id. 160–70. Thus, the consultative physicians justifiably focused their opinions on Douglas's previously-claimed impairments, given that information about these impairments comprised most of the record when the physicians prepared their reports. Additionally, the record suggests that Douglas did not stop working because of any physical limitation but due to his employer's death. See id. 114; see also id. 33. The regulations make clear that, if an individual is otherwise able to work, the individual's inability to obtain work does not render him disabled. See 20 C.F.R. §§ 404.1566(c), 416.966(c).

In sum, the ALJ's determination that Douglas retained the RFC to perform light/unskilled work with asthma-related limitations is supported by substantial evidence. Thus, the court rejects Douglas's second challenge to the Commissioner's final decision.

Finally, Douglas contends that the ALJ erroneously failed to conduct a function-by-function analysis under Social Security Ruling ("SSR") 96-8p. See Pl.'s Mem. Supp. Mot. J. Pleadings 6–7.

7

Case 2:11-cv-00037-D   Document 21   Filed 08/10/12   Page 7 of 9

Specifically, Douglas argues that the ALJ "did not assess Douglas's ability to carry, walk, stand, bend, stoop, etc." Id. 7 (emphasis omitted). The Commissioner responds that the ALJ satisfied SSR 96-8p in assessing Douglas's RFC. See Def.'s Mem. Supp. Mot. J. Pleadings 13–14.

The court agrees with the Commissioner. SSR 96-8p directs an ALJ to consider a claimant's ability to meet physical, mental and other requirements of work before the ALJ expresses an RFC in terms of exertional levels of work. See SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); 20 C.F.R. §§ 404.1545(b)–(d). The regulations provide that,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b).

Douglas's argument is puzzling. A function-by-function analysis would consider only Douglas's impairments other than asthma. Douglas apparently concedes that the ALJ's finding that these impairments did not render Douglas disabled was correct. See Pl.'s Mem. Supp. Mot. J. Pleadings 5. Nonetheless, the ALJ gave some weight to the opinions of two consultative physicians who each performed a function-by-function analysis. See Tr. 32–33; see also id. 356–63, 413–20. To the extent that these consultative physicians' conclusions were different from the conclusion of Douglas's treating physician, the ALJ appropriately discredited the opinion of Douglas's treating physician, finding that it was "not supported by the doctor's treatment records or by the bulk of the objective medical evidence of record as a whole." Id. 33; see id. 421–27. Moreover, in finding that Douglas retained the RFC to perform light/unskilled work with asthma-related limitations, the ALJ appropriately considered Douglas's ability to meet physical, mental and other requirements of work

8

before expressing an RFC in terms of an exertional level of work, as required by SSR 96-8p. To the extent that the ALJ did not explicitly mention each function, he was not required to do so. See, e.g., Manring v. Barnhart, No. 2:05CV00058, 2007 WL 201081, at *4–5 (W.D. Va. Jan. 25, 2007) (unpublished). Accordingly, the ALJ appropriately determined that Douglas retained the RFC to perform light/unskilled work with asthma-related limitations and did not err by failing to conduct a function-by-function analysis. Thus, the court rejects Douglas's third challenge to the Commissioner's final decision.

II.

Accordingly, the Commissioner's motion for judgment on the pleadings [D.E. 18] is GRANTED, Douglas's motion for judgment on the pleadings [D.E. 14] is DENIED, and the Commissioner's final decision is AFFIRMED.

SO ORDERED. This 10 day of August 2012.

JAMES C. DEVER III
Chief United States District Judge